UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

KEVIN JENSEN,

        Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

No. 2:16-cv-1428-KJN

ORDER

Plaintiff Kevin Jensen seeks judicial review of a final decision by the Commissioner of Social Security ("Commissioner") denying plaintiff's application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI, respectively, of the Social Security Act ("Act").[1] In his motion for summary judgment, plaintiff principally contends that the Commissioner erred by finding that plaintiff was not disabled from February 15, 2009, plaintiff's alleged disability onset date, through October 24, 2014, the date of the administrative law judge's ("ALJ") decision. (ECF No. 19.) The Commissioner opposed plaintiff's motion and filed a cross-motion for summary judgment. (ECF No. 20.) No optional

---

[1] This action was referred to the undersigned pursuant to Local Rule 302(c)(15), and both parties voluntarily consented to proceed before a United States Magistrate Judge for all purposes. (ECF Nos. 8, 9, 12.)

1

reply brief was filed.

After carefully considering the record and the parties' briefing, the court DENIES plaintiff's motion for summary judgment, GRANTS the Commissioner's cross-motion for summary judgment, and AFFIRMS the Commissioner's final decision.

I.   BACKGROUND

Plaintiff was born on May 3, 1966; completed 14 years of education and obtained an Associate's Degree in Criminal Justice; can communicate in English; and previously worked as an automotive technician. (Administrative Transcript ("AT") 35, 50-51.)[2] On July 30, 2012, plaintiff applied for DIB, alleging that his disability began on February 15, 2009. Additionally, plaintiff filed for SSI on August 21, 2013, again alleging disability beginning on February 15, 2009. Plaintiff claimed that he was disabled due to degenerative disc disease, carpal tunnel, depression, trouble sleeping, asthma, breathing problems, hypertension, and arthritis. (AT 25, 27, 209.) After plaintiff's application was denied initially and on reconsideration, an ALJ conducted a hearing on May 6, 2014. (AT 44-72.) The ALJ subsequently issued a decision dated October 24, 2014, determining that plaintiff had not been under a disability, as defined in the Act, from February 15, 2009, plaintiff's alleged disability onset date, through the date of the ALJ's decision. (AT 22-43.) The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review on April 20, 2016. (AT 1-7.) Plaintiff subsequently filed this action on June 23, 2016, to obtain judicial review of the Commissioner's final decision. (ECF No. 1.)

II.   ISSUES PRESENTED

On appeal, plaintiff raises the following issues: (1) whether the ALJ failed to properly account for plaintiff's mental impairments; and (2) whether the ALJ improperly rejected the opinion of plaintiff's treating physician, Dr. Sultan.[3]

---

[2] Because the parties are familiar with the factual background of this case, including plaintiff's medical and mental health history, the court does not exhaustively relate those facts in this order. The facts related to plaintiff's impairments and treatment will be addressed insofar as they are relevant to the issues presented by the parties' respective motions.

[3] The third issue identified in plaintiff's brief concerns the requested remedy for the alleged ALJ

2

III.     LEGAL STANDARD

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it. Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is more than a mere scintilla, but less than a preponderance. Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003) (citation omitted). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007), quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citation omitted). "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

IV.      DISCUSSION

### Summary of the ALJ's Findings

The ALJ evaluated plaintiff's entitlement to DIB and SSI pursuant to the Commissioner's standard five-step analytical framework.[4] As an initial matter, the ALJ determined that plaintiff

---

errors.

[4] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program. 42 U.S.C. §§ 401 et seq. Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. §§ 1382 et seq. Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A parallel five-step sequential evaluation governs eligibility for benefits under both programs. See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987). The following summarizes the sequential evaluation:

Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.

Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.

Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is automatically determined disabled. If not, proceed to step four.

met the insured status requirements of the Act for purposes of DIB through June 30, 2014. (AT 27.) At the first step, the ALJ concluded that plaintiff had not engaged in substantial gainful activity since February 15, 2009, his alleged disability onset date. (Id.) At step two, the ALJ found that plaintiff had the following severe impairments: mild degenerative disc disease of the thoracic spine, moderate carpal tunnel syndrome of the left wrist, mild carpal tunnel syndrome of the right wrist, mild degenerative joint disease of the right and left shoulders, and obesity. (Id.) However, at step three, the ALJ determined that plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (AT 30.)

Before proceeding to step four, the ALJ assessed plaintiff's RFC, finding that plaintiff could perform light work as defined in 20 C.F.R. § 404.1567(b) and § 416.967(b), except that plaintiff could:

> lift and carry 25 pounds occasionally, 20 pounds frequently, and sit, stand and walk for 6 hours each in an 8-hour day. The claimant can frequently climb, but occasionally climb ladders, ropes, and scaffolds. The claimant can frequently balance, stoop, kneel, crouch, and crawl. The claimant can frequently finger and handle and frequently perform overhead reaching with both arms.

(Id.) At step four, the ALJ determined that plaintiff was unable to perform any past relevant work. (AT 34.) However, at step five the ALJ found that, in light of plaintiff's age, education, work experience, RFC, and the vocational expert's ("VE") testimony, there were jobs that existed in significant numbers in the national economy that plaintiff could perform. (AT 35.)

---

Step four: Is the claimant capable of performing her past relevant work? If so, the claimant is not disabled. If not, proceed to step five.

Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

4

1 | Thus, the ALJ concluded that plaintiff had not been under a disability, as defined in the
Act, from February 15, 2009, plaintiff's alleged disability onset date, through the date of the
ALJ's decision on October 24, 2014. (AT 38.)

Plaintiff's Substantive Challenges to the Commissioner's Determinations

*Whether the ALJ failed to properly account for plaintiff's mental limitations*

The ALJ found plaintiff's mental impairments not severe at step two. Nevertheless, as plaintiff points out, the ALJ also gave great weight to the opinion of Dr. Debra Moore, the consultative psychologist who personally evaluated plaintiff's mental impairments. (AT 29.) Dr. Moore diagnosed plaintiff with adjustment disorder with depressed mood and alcohol abuse in full remission. (AT 341.) She opined that plaintiff was mildly to moderately impaired in his ability to understand and carry out an extensive variety of technical and/or complex job instructions, as well as his ability to maintain concentration/persistence/attention, due to difficulties focusing because of sleep deprivation. (Id.) However, plaintiff was mildly impaired to unimpaired in his ability to relate and interact with supervisors and co-workers; understand detailed but uncomplicated job instructions; deal with the public; and withstand the stress and pressures associated with day-to-day work activity. (AT 341-42.) Plaintiff's ability to understand, remember, and carry out simple one or two-step job instructions was unimpaired. (AT 341.)

Even assuming, without deciding, that the ALJ technically erred by not finding a severe mental impairment at step two, any such error was harmless. See Curry v. Sullivan, 925 F.2d 1127, 1129 (9th Cir.1990) (harmless error analysis applicable in judicial review of social security cases); Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012) ("we may not reverse an ALJ's decision on account of an error that is harmless").

As an initial matter, the Ninth Circuit has already held that moderate mental limitations do not even require VE testimony. Hoopai v. Astrue, 499 F.3d 1071, 1077 (9th Cir. 2007). In Hoopai, a medical source determined that the claimant was moderately limited in:

////

> his ability to maintain attention and concentration for extended periods; his ability to perform activities within a schedule, maintain regular attendance, and be punctual with customary tolerance; and his ability to complete a normal workday and workweek without interruption from psychologically-based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods.

Id. After the ALJ utilized the grids at step five to determine that the claimant was not disabled, the claimant contended on appeal that the ALJ was required to seek vocational expert testimony regarding the limitations assessed. Id. at 1075. The Ninth Circuit rejected this argument, holding that these moderate limitations were not sufficiently severe to prohibit the ALJ from relying on the grids without the assistance of a vocational expert. Id. at 1077. Thus, the mild to moderate mental limitations assessed by Dr. Moore here do not even require VE testimony.

Moreover, in this case, a VE testified and identify several representative occupations, including three light and three sedentary occupations involving unskilled (SVP 2 level) work, that the plaintiff could perform. (AT 36.) Such occupations are plainly not precluded by the mild to moderate limitations assessed by Dr. Moore, because they involve simple, non-complex work and logically have lesser concentration demands. Therefore, even if the ALJ had specifically included such mental limitations in the RFC, it would have been inconsequential to the case outcome.

Finally, even though plaintiff makes much of the fact that Dr. Moore assessed a GAF score of 50, suggestive of serious symptoms or impairment, GAF scores are not dispositive in Social Security cases and do not directly correlate to Social Security severity assessments. Trinchere v. Astrue, 2008 WL 4395283, at *6 (C.D. Cal. Sept. 3, 2008). A low GAF score does not alone determine disability, but is a piece of evidence to be considered with the rest of the record. Olds v. Astrue, 2008 WL 339757, at *4 (D. Kan. Feb. 5, 2008). An ALJ is permitted to discredit a GAF score where it is unsupported by the evidence. Clark v. Astrue, 2009 WL 542166, at *6 (C.D. Cal. Mar. 4, 2009). Here, the ALJ permissibly gave Dr. Moore's GAF score little weight, because it is inconsistent with the mild to moderate mental limitations specifically assessed in Dr. Moore's opinion.

Therefore, the court concludes that the ALJ properly accounted for plaintiff's mental

impairments, and that any technical error was harmless.

*Whether the ALJ improperly rejected the opinion of plaintiff's treating physician, Dr. Sultan*

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. Holohan v. Massanari, 246 F.3d 1195, 1201-02 (9th Cir. 2001); Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). Generally speaking, a treating physician's opinion carries more weight than an examining physician's opinion, and an examining physician's opinion carries more weight than a non-examining physician's opinion. Holohan, 246 F.3d at 1202.

To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record; and (2) clinical findings support the opinions. An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons. Lester, 81 F.3d at 830-31. In contrast, a contradicted opinion of a treating or examining professional may be rejected for "specific and legitimate" reasons. Id. at 830. While a treating professional's opinion generally is accorded superior weight, if it is contradicted by a supported examining professional's opinion (supported by different independent clinical findings), the ALJ may resolve the conflict. Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)). The regulations require the ALJ to weigh the contradicted treating physician opinion, Edlund, 253 F.3d at 1157,[5] except that the ALJ in any event need not give it any weight if it is conclusory and supported by minimal clinical findings. Meanel v. Apfel, 172 F.3d 1111, 1114 (9th Cir. 1999) (treating physician's conclusory, minimally supported opinion rejected); see also Magallanes, 881 F.2d at 751. The opinion of a non-examining professional, by itself, is insufficient to reject the opinion of a treating or examining professional. Lester, 81 F.3d at 831.

---

[5] The factors include: (1) length of the treatment relationship; (2) frequency of examination; (3) nature and extent of the treatment relationship; (4) supportability of diagnosis; (5) consistency; and (6) specialization. 20 C.F.R. § 404.1527.

7

On July 3, 2012, plaintiff's treating physician, Dr. Sultan A. Sultan, provided a four-page physical capacities evaluation essentially finding plaintiff completely disabled. (AT 307-10.) Based on diagnoses of discogenic disease, carpal tunnel syndrome, and severe degenerative joint disease, Dr. Sultan opined, *inter alia*, that plaintiff could only sit for two hours out of an eight hour workday and only stand and walk for one hour each. (AT 307, 310.) Furthermore, Dr. Sultan noted that the plaintiff could only occasionally lift up to 5 pounds, and could only use his hands for grasping, pushing, pulling, and fine manipulation for between 5 and 10% of an eight hour workday. (AT 308.) Because Dr. Sultan's opinion was contradicted by other medical opinions in the record, the ALJ was required to provide specific and legitimate reasons for discounting Dr. Sultan's opinion. For the reasons discussed below, the court finds that the ALJ properly discharged that duty.

As an initial matter, the ALJ reasonably gave Dr. Sultan's July 3, 2012 opinion little weight, because it is conclusory, minimally supported, and "without substantial support from objective clinical or diagnostic findings…." (AT 34.) Indeed, the March 27, 2012 X-rays requested by Dr. Sultan showed no significant degenerative changes in plaintiff's lumbar spine, and only mild multilevel degenerative disc disease in plaintiff's thoracic spine. (AT 311-12.) Furthermore, a nerve conduction study performed on June 13, 2012, revealed only moderate carpal tunnel syndrome on the left and mild carpal tunnel syndrome on the right. (AT 313-17.) Dr. Sultan's opinion entirely fails to explain why such mild to moderate clinical findings would render plaintiff completely disabled.

The ALJ also substantially relied on the opinion of consultative examiner, Dr. Jay Keystone, who personally examined plaintiff on January 16, 2013. (AT 33-34, 345-50.) Dr. Keystone noted plaintiff's complaints related to his back, hands, asthma, hypertension, and obesity, but also observed that plaintiff walked independently into the examination room with a normal gait. (AT 347-49.) Upon examination, a straight leg raising test was negative bilaterally; plaintiff had normal motor strength/muscle bulk in all extremities; and a sensory examination and reflexes were normal in all extremities. (AT 347-48.) Dr. Keystone found no evidence of deformities, swelling, spasms, or tenderness on palpation or percussion of plaintiff's joints or

extremities. (AT 348.) Dr. Keystone diagnosed plaintiff with probable mild osteoarthritis resulting in plaintiff's back and finger joint pain, mild bronchial asthma, and hypertension, but opined that plaintiff had no physical functional limitations beyond pulmonary precautions due to plaintiff's asthma. (AT 349.) Because Dr. Keystone personally examined plaintiff and made independent clinical findings, his opinion constitutes substantial evidence on which the ALJ was entitled to rely.

Furthermore, the ALJ properly relied on the opinion of non-examining state agency physician Dr. Jaituni, who reviewed plaintiff's records on February 1, 2013, and opined that plaintiff did not have a severe physical impairment. (AT 34, 78.) See Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001) ("Although the contrary opinion of a non-examining medical expert does not alone constitute a specific, legitimate reason for rejecting a treating or examining physician's opinion, it may constitute substantial evidence when it is consistent with other independent evidence in the record.").

Finally, although Dr. Sultan indicated that plaintiff's symptoms and medications frequently interfered with the attention and concentration required to perform even simple work-related tasks (AT 307), plaintiff himself indicated that he could pay attention for "a long time," finished what he started, and could follow written and spoken instructions "very well." (AT 255.) Thus, as the ALJ noted, Dr. Sultan's opinion clearly overstated plaintiff's limitations, reducing the persuasiveness of the opinion. (AT 34.)

Therefore, the court finds that the ALJ provided several specific and legitimate reasons for discounting Dr. Sultan's opinion.

V.  CONCLUSION

For the foregoing reasons, the court concludes that the ALJ's decision was free from prejudicial error and supported by substantial evidence in the record as a whole. Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 19) is DENIED.

2. The Commissioner's cross-motion for summary judgment (ECF No. 20) is GRANTED.

9

1. 3. The final decision of the Commissioner is AFFIRMED, and judgment is entered for the Commissioner.

4. The Clerk of Court shall close this case.

IT IS SO ORDERED.

Dated: June 20, 2017

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE